**57TH STREET MANAGEMENT CORP.,**
Helen Maintenance Corp., Main Operating Corp., Rego Maintenance Corp., Carrick Service Corp., Terminal System, Inc., Transportation Systems, Inc., Meter Operating Corp., Dover Garage Inc., et al., Plaintiffs,

v.

**The CITY OF NEW YORK, the State Tax Commission of the State of New York and James H. Tully, Jr., Commissioner of the State Tax Commission of the State of New York, Defendants.**

No. 77 Civ. 5759 (MEF).

United States District Court,
S. D. New York.

Aug. 11, 1978.

Martin J. Hertz, Friedlander, Gaines, Cohen, Rosenthal & Rosenberg, New York City, for plaintiffs.

Samuel J. Warms, Asst. Corp. Counsel In Charge of the Excise Tax Division, New York City Dept. of Law, New York City, for defendant City of New York.

Louis J. Lefkowitz, Atty. Gen. of the State of New York, New York City, for defendants Tully and the New York State Tax Commission; Judith A. Gordon, New York City, of counsel.

MEMORANDUM

FRANKEL, District Judge.

This action, brought by some 40 New York taxicab fleet owners and a taxicab owners' cooperative, challenges the constitutionality of a one-cent per gallon excise tax on the sale of certain leaded gasoline by distributors within the City of New York. Under the authority of New York Tax Law § 284–b, enacted in 1971, New York City Local Law 40, L.L. 1971, imposes the tax on "motor fuel which contains one-half gram or more of tetra ethyl lead, tetra methyl lead or any other lead alkyls per gallon, sold within or for sale within such city . . ." The tax is administered and collected for the benefit of the City by the New York State Tax Commission.

Plaintiffs contend primarily that the tax is inconsistent with Section 211 of the Clean Air Act, as amended, 42 U.S.C. § 1857f–6c, and the regulations of the Environmental Protection Administration promulgated thereunder, and therefore offends the Supremacy Clause. Additionally, they maintain that it creates an impermissible burden on interstate commerce; that, in light of its alleged inconsistency with other City taxing ordinances (which are in turn said to be inconsistent with each other), the law is unconstitutionally vague; and that, by reason of claimed confusion on the part of both Tax Commission personnel and producers and vendors of gasoline as to the standards applicable to payment of the tax, it has been administered in a fashion which violates plaintiffs' rights under the Equal Protection and Due Process Clauses of the Fourteenth Amendment. Plaintiffs accordingly ask the court to declare both the City taxing ordinance and the State enabling legislation null and void, and to enjoin their enforcement. They also demand a refund

of $1,407,792.03 for taxes paid from 1971 through 1974. Jurisdiction is alleged under 28 U.S.C. §§ 1331, 1343(3), and 1337.

The only issue now before the court is whether plaintiffs' claims may be adjudicated in this forum. Defendants—the City of New York, the State Tax Commission, and the State Commissioner—have moved for dismissal of the complaint on the ground that the suit is maintained in violation of the Tax Injunction Act of 1937, 28 U.S.C. § 1341. The court concludes that the motion should be granted.

## I.

Preliminarily, some procedural brush must be cleared. Shortly after filing this lawsuit, plaintiffs commenced a proceeding under New York C.P.L.R. Article 78 in the Supreme Court of the State of New York, Albany County, for judicial review of a Final Determination of the State Commission's Tax Appeals Bureau denying their application for the refund also sought here. The respondents in that proceeding, members of the Commission—there represented by an *upstate* office of the Attorney General—have similarly moved for dismissal, on the ground that this action constitutes a prior proceeding for the same relief. Unsurprisingly, plaintiffs complain that they discern a whipsaw. They maintain that the State's demand for dismissal in state court on the cited ground signifies a "binding election" by the defendants for federal adjudication of the merits of their claim, i. e., that the § 1341 objection has been waived. However, the State defendants' counsel here represent that the Attorney General's left and right hands have now met and joined in the position that the state proceedings, "once instituted," must be "preferred" over a federal determination of the matter, pursuant to both the limitations of § 1341 and the "policy" of that office.

The short resolution of this dispute is to observe that it is irrelevant; with all respect, neither the policies of the State's attorneys nor any litigant's election, "binding" or otherwise, can invest this court with subject matter jurisdiction which federal law otherwise denied. Beyond this, however, the conundrum proves to be apparent only. To invoke at least one of the state statutory remedies on which defendants themselves rely in arguing for dismissal under § 1341, it was essential that plaintiffs first seek the administrative determination which is a condition precedent to Article 78 review. Having done so, they were equally obliged to institute the proceeding for review of the Commission's adverse ruling within the time allowed by the taxing statute; it is thus disingenuous for defendants to maintain that plaintiffs invited their claimed predicament by filing two lawsuits. On the other hand, it is clear that the State's motion to dismiss the Article 78 proceeding on the stated ground was prudent so long as the instant case, or at least this motion, was pending. The court is advised that at the instance of the State respondents, decision on the application for dismissal of the state court action has been deferred to await the outcome here; and defendants concede it will become moot should they prevail. Thus, the procedural fencing made possible by concurrent lawsuits before two sovereigns has not impaired either court's ability fully to consider the issues properly before it—a result illustrating, in another dimension, the important principles of federalism to which we now turn.

## II.

The Tax Injunction Act, 28 U.S.C. § 1341, provides:

"The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."

As we have but recently been reminded, the "policy of restraint" embodied in this command, rooted "in equity practice, in principles of federalism, and in recognition of the imperative need of the State to administer its own fiscal operations," both reflects and confirms our settled "equitable duty to refrain from interfering with a

State's collection of its revenue except in cases where an asserted federal right might otherwise be lost." *Tully v. Griffin, Inc.,* 429 U.S. 68, 73, 97 S.Ct. 219, 222, 50 L.Ed.2d 227 (1976). With respect to petitions for *injunctive* relief, the "peculiar force" of this mandate is unequivocal:

> "The scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts, and a proper reluctance to interfere by injunction with their fiscal operations, require that such relief should be denied in every case where the asserted federal right may be preserved without it. Whenever the question has been presented this Court has uniformly held that the mere illegality or unconstitutionality of a state or municipal tax is not in itself a ground for equitable relief in the courts of the United States. . . ."

*Matthews v. Rodgers,* 284 U.S. 521, 525–26, 52 S.Ct. 217, 219, 76 L.Ed. 447 (1932); see also *Township of Hillsborough v. Cromwell,* 326 U.S. 620, 622–23, 66 S.Ct. 445, 90 L.Ed. 358 (1946); *Great Lakes Dredge & Dock Co. v. Huffman,* 319 U.S. 293, 297–99, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943). Although our highest Court has as yet declined to decide whether the statute by its terms similarly prohibits declaratory relief concerning the invalidity of a state tax, *Great Lakes Dredge & Dock Co. v. Huffman, supra,* 319 U.S. at 299, 63 S.Ct. at 1073, this court is unmistakably advised that "those considerations which have led federal courts of equity to refuse to enjoin the collection of state taxes, save in exceptional cases, require a like restraint in the use of the declaratory judgment procedure." *Id.* For either purpose, we must repair initially to the standard set forth in § 1341, for it is now understood that the "restraint" counselled in *Huffman* becomes a compulsion to withhold declaratory relief where a taxpayer's state remedies are "plain, speedy and efficient" within the meaning of that Act. See *American Commuters Ass'n v. Levitt,* 405 F.2d 1148 (2d Cir. 1969); *City of Houston v. Standard-Triumph Motor Co.,* 347 F.2d 194 (5th Cir. 1965); *Wyandotte Chemicals Corp. v. City of Wyandotte,* 321 F.2d 927 (6th Cir.

1963); *Klotz v. Consolidated Edison Co.,* 386 F.Supp. 577 (S.D.N.Y.1974); *Hickmann v. Wujick,* 333 F.Supp. 1221 (E.D.N.Y.1971).

The inquiry thus narrows to the question whether the remedies available to plaintiffs in the courts of New York State satisfy this test. The answer must be in the affirmative. *Tully v. Griffin, Inc., supra,* held that federal injunctive relief should not have issued because the declaratory judgment procedure available under New York C.P. L.R. § 3001 furnished a "plain, speedy and efficient" means for a taxpayer to challenge the imposition of a sales tax on constitutional grounds while preserving the right to contest the amount of tax due. Adhering to the judgment reflected in the summary affirmance in *Ammex Warehouse Co. v. Gallman,* 414 U.S. 802, 94 S.Ct. 163, 38 L.Ed.2d 39 (1973), *aff'g Ammex-Champlain Corp. v. Gallman,* 72 Civ. 306 (N.D. N.Y., Mar. 15, 1973) (unreported), the Court found this to be true despite a provision in the state taxing statute which limited the taxpayer to Article 78 review of an administrative determination—and in fact explicitly precluded any action for an injunction, declaratory judgment, money had and received, or any other "action or proceeding." The Court remained "fully persuaded" that notwithstanding such exclusive remedy provisions, "the New York courts have consistently held that other procedures, including an action for a declaratory judgment, may be used when the claim is that the tax is unconstitutional." *Tully v. Griffin, Inc., supra,* 429 U.S. at 75, 97 S.Ct. at 223.

A similar restriction ostensibly applies to review of administrative rulings respecting the tax here at issue, see New York Tax Law §§ 288, 289–c(6). However, none of the state decisional authorities upon which the *Tully* Court relied suggest any reason to believe that the New York rule permitting a plenary suit for a refund or a declaratory judgment in actions challenging the constitutionality of local tax laws would not obtain in this case. See, e. g., *Slater v. Gallman,* 38 N.Y.2d 1, 377 N.Y.S.2d 448, 339 N.E.2d 863 (1975); *First National City Bank v. City of New York Finance Admin-*

*istration,* 36 N.Y.2d 87, 365 N.Y.S.2d 493, 324 N.E.2d 861 (1975); cf. *Klotz v. Consolidated Edison Co., supra,* 386 F.Supp. at 586. Indeed, plaintiffs offer no argument that the state declaratory judgment procedure is unavailable to them, and the court knows of none.

Even if this were not true, the procedures for review accorded by the Tax Law itself —and, as noted, already invoked by the taxpayers here—must be deemed to afford a "plain, speedy and efficient" remedy. While the Court declined to reach the issue in *Tully,* 429 U.S. at 76, n. 8, 97 S.Ct. 219, provisions for administrative determination and Article 78 review substantially identical to those applicable to plaintiffs have been found to qualify under this standard. *American Commuters Ass'n v. Levitt,* 405 F.2d 1148 (2d Cir. 1969), aff'g 279 F.Supp. 40 (S.D.N.Y.1967); *Collier Advertising Service v. City of New York,* 32 F.Supp. 870 (S.D.N.Y.1940).

Confronted by this array of precedents compelling dismissal, plaintiffs contend that the suit may nonetheless be maintained because of particular circumstances which allegedly render the State's remedies "inadequate" for *them.* First, citing the exception noted in *Tully* for cases where "an asserted federal right might otherwise be lost," they maintain that the decision in *Exxon Corp. v. City of New York,* 548 F.2d 1088 (2d Cir. 1977), invalidating New York City's Local Law 49 as inconsistent with the Clean Air Act and lead content regulations then in effect thereunder, established the existence of a "right" to federal preemption of the field and that they will be deprived of this right if remitted to the courts of the State. The contention is not sound. The courts of New York are as competent as this court initially to determine whether the challenged statutes are invalid by reason of federal preemption or any other constitutional infirmity; this is no more the peculiar province of the federal district courts than the constitutional claims under Article IV and the Fourteenth Amendment which this court declined to decide in *American Commuters, supra,* 279 F.Supp. 40.

Plaintiffs argue further that the instant action falls within the exception to the rule of *Great Lakes Dredge & Dock Co. v. Huffman* applied in *Township of Hillsborough v. Cromwell,* 326 U.S. 620, 66 S.Ct. 445, 90 L.Ed. 358 (1945), where a New Jersey taxpayer sued in federal court to have declared null and void under both the Fourteenth Amendment and state law certain assessments on intangible personal property entered by the Collector of Hillsborough Township. Though reaffirming generally the principles of both the predecessor to § 1341 and the *Huffman* case, the Court held that the district court had properly retained jurisdiction because there was "such uncertainty concerning the New Jersey remedy as to make it speculative . . . whether the State affords full protection to the federal rights," 326 U.S. at 625, 66 S.Ct. at 449 (citation omitted), and because certain limitations on appeal might have closed avenues for review. It is claimed that reliance upon *Hillsborough* is apt because Tax Law § 284–b and Local Law 40, as written and as applied, are similarly mired in uncertainties, springing both from inadequate definitions of "leaded gasoline" and from the refusal of responsible State authorities to issue clarifying regulations and standards. The difficulty for plaintiffs is their confusion of "uncertainties" which might ultimately defeat these statutes on the merits and "uncertainties" as to whether the federal claims may be heard. Unlike the situation in *Hillsborough,* there is here no doubt whatever of the availability of state judicial proceedings in which plaintiffs' constitutional objections may be explored. In fact, the very ambiguities alleged to pervade the terms and the administration of the challenged tax laws independently provide a telling argument for deferral to the only courts which may authoritatively construe the meaning of the statutes within the broader state scheme and determine whether the Tax Commission is guilty of the asserted defaults.

Plaintiffs have also advanced various complaints about the "adequacy" of the Article 78 proceeding now in abeyance. All are without merit. Notwithstanding plain-

tiffs' intimations to the contrary, the Tax Commission's decision to abstain from ruling on plaintiffs' constitutional claims does not impair the state court's ability to do so. The suggestion that some portion of their refund claim may be time-barred is of no moment. As defendants note, there is actually *nothing before us to support the thought that plaintiffs' administrative claim for refund was untimely.* If it was, however, and if a valid state time limitation should be applicable, there is no basis for hope that the federal court would, or properly should, ignore it.

Finally, plaintiffs protest generally that the Attorney General has threatened to invoke a bevy of largely unspecified dilatory tactics which will render the pending state court proceeding anything but "plain, speedy and efficient," including a motion to dismiss for failure to state a claim for relief. We may not deem New York's otherwise sufficient remedy "inadequate" because defendants may interpose defenses that take time to adjudicate in any court, state or federal.

For the reasons stated, defendants' motion to dismiss the complaint must be, and it is, granted.

It is so ordered.